# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK ALFRED DAVIS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of the Social ) <br> Security Administration, ) <br> ) <br> Defendant. ) | Case No. CIV-11-282-SPS |

## OPINION AND ORDER

The claimant Mark Alfred Davis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born November 29, 1966, and was forty-three years old at the time of the administrative hearing. (Tr. 29). He received asbestos abatement training in 1988, completed his GED in 2002, and has worked as an electrician. (Tr. 50, 152). The claimant alleges that he has been unable to work since March 6, 2008, due to a back injury, anxiety, and panic attacks. (Tr. 145).

**Procedural History**

On February 13, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Charles Headrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 11, 2010. (Tr. 14-20). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.*, the claimant could lift 10 pounds occasionally and frequently, and stand/walk/sit for six hours in an eight-hour workday. (Tr. 17). The

ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, assembly, inspector/checker, miscellaneous laborer, and food order clerk. (Tr. 20).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly question the Vocational Expert ("VE") as to the claimant's impairments, (ii) by failing to properly evaluate the medical source opinions, and (iii) by failing to conduct a proper credibility analysis. The Court finds that the ALJ *did* err in his credibility analysis, and the Commissioner's decision is therefore reversed.

The ALJ found that the claimant had the severe impairments of degenerative disc disease and status post fusion at L4-5 and L5-S1. (Tr. 16). According to the medical evidence, the claimant was injured on February 22, 2008, while he was working as an electrician. (Tr. 182). He reported low back pain radiating into his right buttock and down his right leg, where he was experiencing numbness and tingling. (Tr. 182). After conservative treatment of steroid injections failed, the claimant underwent surgery on July 1, 2008, consisting of laminectomy, discectomy, and fusion at L4-5 and L5-S1. (Tr. 189, 197-200, 212-215). Records indicate the claimant was enrolled in physical therapy beginning August 2008 through at least November 2008. (Tr. 231-290). At the initial evaluation, Physical Therapist Tim Minnick noted that the claimant had difficulty with daily activities requiring ambulation, stairs, bending, lifting, and squatting; that the claimant reported his legs occasionally "giv[ing] out"; and that he ambulated using a cane

-4-

and demonstrating instability at various times. (Tr. 231). Throughout the physical therapy treatment, the claimant complained of low back pain or stated that his symptoms had not changed. (*e. g.* Tr. 233, 244, 248, 250, 252, 254, 258-260). On October 29, 2008, Mr. Minnick noted that the claimant reported no difference since beginning physical therapy, and that he was still having low back pain and pain into his left hip and leg. (Tr. 274). On December 9, 2008, Physical Therapist Darrell Platt of Excel Therapy Specialists evaluated the claimant's ability to perform work. (Tr. 296-300). Mr. Platt noted that the claimant's symptoms consisted of left low back pain and left hip pain, with intermittent shooting pains into bilateral legs, but more on the left. (Tr. 296). After several tests, Mr. Platt found that the claimant's efforts indicated he could perform light physical capacity work above the waist, and less than sedentary physical capacity work below the waist. (Tr. 299). Mr. Platt further noted that the claimant was unable to perform work from floor to knee due to his legs being weak, and because he was not safe when squatting. (Tr. 299). Dr. Tyler Boone, claimant's orthopedic surgeon, opined for purposes of the claimant's workman's compensation claim that the claimant could pursue sedentary work for half days, or was temporarily totally disabled. (Tr. 316). On January 7, 2009, Dr. Boone released the claimant from his care, with a ten-pound lifting restriction, as well as restrictions of no squatting, repetitive stooping or bending, or ladder climbing. (Tr. 340). On January 14, 2009, Dr. Boone opined that the claimant had a partial permanent impairment to the whole person of 17%. (Tr. 306).

On January 13, 2009, Dr. Kenneth Trinidad completed a consultative examination of the claimant. (Tr. 340-344). Dr. Trinidad found that the claimant had sustained

injuries and work-related trauma, and that he would benefit from pain management and might require hardware removal surgery in the future. (Tr. 342). Dr. Trinidad calculated the claimant's permanent impairment as 64% total permanent impairment to the lumbar spine, with 59% of the 64% of that impairment attributable to the claimant's February 2008 injury. Additionally, Dr. Trinidad opined that the claimant had 20% impairment to the whole man, due to moderate gait disturbance. (Tr. 343-344). He further found, *inter alia*, that the claimant's condition was stable and chronic and that maximum medical recovery had been achieved. (Tr. 343). On March 30, 2009, a state reviewing physician found that the claimant could do sedentary work, and specifically stated that the claimant's allegations of physical limitations were credible. (Tr. 355-356).

The claimant's mother Deanna Anno completed a Third Party Function Report. (Tr. 154-161). Ms. Anno stated in her Report that she spoke with the claimant daily, that she often helped him with running errands and grocery shopping, and that she visited him at home to help clean and do laundry. (Tr. 154). She stated that the claimant used to work as an electrician and helped work cattle on the weekends, but that she knew of no job he could perform at even part-time work given his impairments. (Tr. 155, 161). She stated that she purchased him a "grabber" so that he would not have to bend over to pick things up; that she often prepared meals and took them to him; that he did not cook because he could not stand, stoop, or lift; and that she helped to support him financially. (Tr. 155-156). Additionally, she stated that she paid someone to do the claimant's yard work, that the claimant had given up his garden, and that the claimant only drove when she was unable to take him and it was for short distances. (Tr. 156-157). She stated that

he used to go fishing and camping, but was not able to anymore, and that he now becomes easily agitated and tired of feeling "crippled" because he had problems accepting "his limitations." (Tr. 158).

At the administrative hearing, the claimant testified that he was still experiencing problems with his back, and that the pain still went down through his legs. (Tr. 32). He described his on-the-job injury and subsequent surgery, then stated that he was still in pain and that on most days he was about a five on the pain scale. (Tr. 33-34). He stated that the pain in his legs felt like bee stings, and that he also has numbness in his left leg, but that he was unaware of any triggers. (Tr. 35). He stated that he spent most of his days laying down, and that his daughter-in-law helped him with chores around the house because some chores, particularly vacuuming, were too difficult. (Tr. 36). He stated that he also had to be careful when brushing his teeth and bending over, and that he has to be very careful when bending over to touch his knees or toes. (Tr. 37). He testified that he thought he could sit approximately twenty or twenty-five minutes at a time, that he could walk approximately twenty minutes, that he spends about half the day with his feet elevated, and that he spends about 75% of his day in bed. (Tr. 38-41). He also testified as to his depression and the medications he takes for depression and for panic attacks. (Tr. 43-45). Additionally, he stated that he wears a back brace "quite a bit," and uses a cane if he goes anywhere. (Tr. 46).

In his written decision, the ALJ referred to the claimant's testimony and summarized the medical evidence, including the opinions of consultative examiners and state reviewing physicians, but did not mention the Third Party Function Report. (Tr. 17-

19). He specifically noted Dr. Trinidad's evaluation, but stated he only gave Dr. Trinidad's opinion "some weight" because the standards for disability were different, *i. e.*, capacity to perform work for a particular employer as opposed to work in the broader national economy. (Tr. 18-19). The ALJ found that the claimant's allegations of disabling symptoms were not credible, then found him not disabled. (Tr. 17-19).

Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias,* 933 F.2d at 801. Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *See Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4.

The specific reasons given by the ALJ for finding that the claimant's subjective complaints were not credible are not entirely supported by the record. For example, the ALJ entirely failed to account for the Third Party Function Report submitted, which supports the claimant's complaints of pain and limited activities. Social Security Ruling (SSR) 06-03p provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. Here, the ALJ made no mention of the Third Party Function Report at all, and his written decision is therefore not clear that he considered this evidence in making his decision. "[T]he ALJ is not required to make specific written findings of credibility *only if* 'the written decision reflects that the ALJ considered the testimony,'" *Blea v. Barnhart*, 466 F.3d 903, 915 (10th Cir. 2006) [citation omitted] [emphasis added], and his failure to do so here is reversible error. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion . . . is itself supported by substantial evidence."). *See also Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.") [citation omitted]. It is particularly problematic here because the Third Party Report bolsters the claimant's own testimony and reports.

Further, the ALJ's credibility analysis preceded the medical evidence and consisted of the following: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning

the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 18). The problem with this analysis (apart from vagueness) is that the ALJ should have *first* evaluated the claimant's testimony (along with all the other evidence) according to the above guidelines *and only then* formulated an appropriate RFC, not the other way around, *i. e.,* the ALJ apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC. *See Bjornson v. Astrue*, 2012 WL 280736 at *4-5 (7th Cir. Jan. 31, 2012) (slip op.) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be.").

"Because a credibility assessment requires consideration of all the factors in combination, when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, [the Court is] precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support the credibility determination." *Bakalarski v. Apfel*, 1997 WL 748653 at *3 (10th Cir. Dec. 3, 1997) [unpublished opinion] [quotation and citations omitted]. Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further

analysis of the claimant's credibility. On remand, the ALJ should properly evaluate the third party witness statement in accordance with the factors set out in SSR 06-03p and *Blea*, then re-assess the claimant's credibility. If the ALJ's subsequent credibility analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 18th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma